Good morning. My name is Dennis Chung, and I'm representing the petitioner Nana Tatu v. Aholelei. Your Honor, we would argue that this is a case where the Board of Immigration Appeals issued a complete decision. There is a per curiam decision that basically is extremely conclusory in nature. There is no articulation of facts. There is only a general statement of law, and basically it says, well, you know, we basically agree with the immigration judge. The government argues on this review that they are entitled to deference, and we would argue that that cannot be so. That perhaps if there was a full articulation of the facts and circumstances, there was a complete analysis by the Board of Immigration Appeals, deference might be appropriate, but not in a case like this. Why shouldn't we treat this sort of akin to a verbano of affirmance, where they're essentially just adopting the findings and conclusions of the immigration judge, so we look through the Board's cursory one-paragraph decision and take a look at what the immigration judge said? I suppose that that is probably what this Court has to do in order to get around that fact. Otherwise, in every case where the Board of Immigration Appeals does what they did here, then there would have to be a reversal. So that is probably where the analysis of the Court begins. Okay. If that's the case, as I read the IJ's decision, he basically found that the conduct did not amount to persecution. I believe that if you take a look at what the immigration judge said... Or torture, I guess would be the... because it's a cat claim, right? Exactly. If you take a look at what the immigration judge said, what she said is that all you need to do is to consider the U.S. Department of State country reports. And notwithstanding the fact that the respondent, the petitioner, testified credibly, and that the immigration judge believed exactly what he said is the truth, it is assumed to be the truth, it doesn't matter, Your Honor. As far as the immigration judge is concerned, if the U.S. Department of State country reports says that Tonga is a country of high-minded jurisprudence, they have a constitution that prohibits torture, then that's all that's necessary. Well, I think you're jumping a step ahead. The question I'm posing to you is, all the acts that he complains of occurred here in Hawaii. And the Board said he's not established a clear probability that he will be tortured. And the immigration judge essentially said what happened to him is not torture. So why can't I read the Board's decision as simply saying he didn't meet his high burden of proof under the Convention against Torture to convince the IJ that A, what happened to him was torture, and B, therefore, if he returned to Tonga, if the same thing happened, it wouldn't be torture under the Convention against Torture. I think it's because the immigration judge did not consider this Court's decision in Zung v. Ashcroft. If you take a look at that decision, it begins with the proposition that torture is not necessarily something that has to be proven. It's more likely than not standard. Do you agree that the IJ found that this wasn't torture? Where is that? I don't agree with that, Your Honor. I basically, in answer to the question posed by the Court, I said that the IJ did not consider that. The IJ conceded. It's in the decision of the immigration judge, I think second to the last page or so. I'm not saying that the IJ rejected or accepted what my client said. Basically, the immigration judge said it didn't matter. As far as she was concerned, the U.S. Department of State country reports were controlling, and we find that that's problematic. What about the fact that the BIA did say something, which is that they stated a legal standard as applicable here, which has been disapproved by this Court? Well, I think that's important. I think that Zung v. Ashcroft is the standard in this circuit, and this is the standard that the immigration judge should have applied here. I think it's troubling that the immigration judge did not consider Zung v. Ashcroft. Maybe I'm misreading the immigration judge's decision, but in looking at pages 68 and 69 of the administrative record, the last two pages of his decision, he talks about the burden that the respondent must meet. He then cites to a BIA case NRAGA, which is a case involving an Iranian Christian of Armenian descent, and compares the facts of your client's case with that one, and concludes that they fall short in establishing the factors that would indicate torture. And then the IJ goes on at the top of the next page to say that even though he's credible, he hasn't met his burden of proof under the Torture Convention, and the BIA affirms. I'm having a hard time getting past the fact that what we have here is not torture, and therefore he didn't meet his burden. I think that probably the way to answer that, Bass, is that what the IJ should have done is to start with the federal regulations. First of all, there's a U.N. Convention Against Torture that becomes part of the federal law through the Code of Federal Regulations. I believe it's 08.18. So the definition of torture appears in the federal regs. And so what the immigration judge failed to do... More than that, the IJ doesn't... I was reading what the IJ said to say not that it wasn't torture, but that he doesn't believe that it would happen when he got to Tonga. In other words, he was not focusing on whether this behavior was torture, but whether whatever was happening to him in the United States would continue when he was in Tonga. And he seemed to be relying on the State Department reports to say that this stuff was not going on in Tonga, whatever this stuff was. That's our complaint with the decision of the immigration judge. But even so, if the immigration judge had done a full analysis, if the immigration judge had started and said this is the definition of torture, there has to be infliction of pain and suffering, in If the immigration judge had gone through the analysis and said that this isn't so, then perhaps the point could be correct that the immigration judge could say that Aholele has fallen short of meeting its burden. But when the IJ doesn't even do the basic analysis, go through the elemental requirements that is provided in the federal regs, we question whether or not you can say that the immigration judge is torture. Is Aholele in detention right now? No, he's not. He's here. All right. We agree that our interpretation of what the immigration judge has said is that it doesn't matter what, how believable the respondent is. All that matters is that the U.S. Department of State country reports says that Tonga is a high-minded jurisprudential country and therefore we If you get past my concern and concede that there is torture here, then your point is that you can't conclude, the IJ improperly concluded, that Tongan officials would protect him if he went back and was subjected to the same sort of abuse. And the problem is the U.S. Department of State country reports does not substantiate It would be a different question, let's say, if the United States was accused of being discriminatory. Well, somebody arguing to another country's tribunal could simply say, well, it cannot be. The United States has statutes. They have law. They have case law. They have administrative agencies. There are ways in which allegations of discrimination are resolved. What's missing in the IJ's deference to the U.S. Department of State country reports is that there is nothing in those reports that says anything about what Tonga has that we should be confident that they can take care of the matter. And that's what's missing, Your Honor. You have to assume. Well, I think your point was that for this particular type of torture, or abuse, whatever you want to call it, torture, that the country reports are just silent. They don't discuss the discrimination against a Tongan who has become Americanized by virtue of the fact that he's lived virtually his entire life here in Hawaii. The arguments are even stronger for us because it's not a question that is silent. It's not only silent, but there is nothing in the country reports that speak to the institutions in Tonga that will prevent discrimination. Such is what I'm suggesting, that if you're talking about the United States, we can go on for hours as to what our country does. But I read the testimony of your witnesses to be that there is a police and a judicial structure, but the police are more concerned with sort of more traditional types of violent felonies, that if somebody commits an assault with a deadly weapon, that the police will investigate, they'll make an arrest, and the courts will prosecute. But that for something like this, they'll just sort of shrug their shoulders and look the other way. Isn't that your argument? No. Our argument is... Did your witnesses testify too? No. They've gone beyond that. They're saying that if you are Tongan and you don't speak Tongan, you will be beaten. Your property will be stolen. And the police won't do anything about it. Exactly. That's what they're saying. How's it different from what I just asked? I think that what the IJ says is more akin to what you've just said. But what I'm arguing is even if you read their testimony, it's even stronger than that. The part of the problem... We'll give you a minute in recovery. Ms. Taylor. I'd like to begin by asking whether the way that we've been treating the BIA opinion is correct. It seems to me that this is not an affirmance, really, of the reasoning of the IJ's reasoning at all. It says, we have reviewed the record, and we agree that the respondent failed to meet his burden of establishing a clear probability that he would be tortured, et cetera, et cetera, C, these cases which were disapproved by the Ninth Circuit. They don't say anything about agreeing. Essentially, they agree with the result of the IJ, but it's neither a streamlined determination nor a Bourbon-type determination. It seems to me what they say it is. We've reviewed the record, and we agree on the bottom line, apparently, on the basis of these cases that are inconsistent with Ninth Circuit law. So don't we just have to remand? No, Your Honor. The reason is because this is found in HCFR 1003.1C3, which addresses the scope of review of the Board. In this section, the Board is only entitled to make legal conclusions and not factual determinations. So therefore, the Court is reviewing both the Board decision and the immigration judge decision, because it's really the immigration judge decision which is the final word on factual findings. And a number of the issues here, something I want to address in a moment, are factual. Certainly the question of whether Petitioner, whether the evidence that he presented showed a likelihood of torture, that is a factual question. And that's so what the immigration judge found is what the Court is reviewing. Do you understand the IJ to have said that it wasn't torture, as opposed to we didn't think there was a likelihood that it would go on in Tonga? Yes, I do. In AR 68, starting really at the bottom of 67, the immigration judge first addresses acquiescence. And then the immigration judge at the top of 68, starting with the likelihood of torture. And in that page, the immigration judge relies quite heavily, as Judge Tallman pointed out, on matter of GA, which is found at 23 INA 366. And matter of GA addresses the likelihood of torture. So clearly, this paragraph, the likelihood of it. You see, that's what I'm saying. GA seemed to be about likelihood, not about what's torture. Oh, you mean if it rose to the level of torture? Right. I understood Judge Tallman to be thinking that there was a finding that this did not rise to the level of torture. And I don't read the IJ as having made any determination on that issue. The way I read the decision is that the immigration judge, first of all, talked about burden of likelihood, whether it will be more likely than not that the respondent or, excuse me, the petitioner will be subjected to torture if he returns. And the immigration judge also then after, well, really in conjunction with that, relied on an acquiescence. But we know that in reviewing it, on the acquiescence issue, the BIA applied the wrong standards. And why isn't that just necessitated a remand? Well, Your Honor, as to acquiescence, the government agrees with you and with petitioner, I think that petitioner is making this point, that the board decision insofar as it addresses acquiescence and it relies on matter of SV and matter of YL, that this court disapproved of those two decisions in Zhang. And we are not defending that piece. But isn't that the dispositive piece? We can't tell. The BIA affirmed the IJ on the ground of this statement, i.e., there's a clear probability they'll be tortured by or with the acquiescence. As far as we can tell, the BIA could have been relying only on the acquiescence issue and not on anything about likelihood of torture. We can't tell. Excuse me. I'm going to get my bottle of water. Okay. Well, that brings us back to the point where we started, which is the scope of review, the limitation. That doesn't make any difference because even if the BIA, the BIA had no reason to be approving of factual determinations that it didn't think were pertinent. And as far as we can tell, we can't tell whether they thought it was pertinent as to whether there would, in fact, be this activity as opposed to it's only pertinent that there was not acquiescence. Well. You know what I'm saying? I mean, you can't just run all the IJ's fact findings through the BIA opinion when the BIA had no reason to be approving of fact findings that it didn't think were pertinent. Well, Your Honor, I guess the government disagrees with your reading of the scope of review regulation. Why is that? Because under that regulation, the factual findings of the immigration judge are the ones that are reviewed because the board doesn't have any authority to make or comment on those factual findings. I understand that, but it also has no reason to, it at least gets to review them for sufficiency of the evidence, as we do, or for clear error, but it has no reason to do that. For example, if we have a case, let's suppose we're deciding this case, and we say, we wrote an opinion that said, as far as we're concerned, there was no acquiescence by the officials, and therefore, it doesn't matter whether or not there was a likelihood of torture. Well, but the board didn't say that. Well, it could have said, that's what I'm saying. But it didn't. One way of reading this is that they could have said that. Well, Your Honor. Because they don't say, we, it's strangely worded in the context of the way the BIA usually words these things. It isn't a streamlined opinion, and it doesn't say we approve of what the IJ did in general. It just says what it says, which is, we agree that there was no whatever on the bottom line citing these overruled cases. It could have been simply on the acquiescence ground. Well, Your Honor, I understand your point. The government disagrees with your view, but of course, you know, the court will have to decide that. I'm only putting something out, and you're here arguing, and if I'm wrong, I'd like to know why. Why is that not a plausible reading of what's here? You're wrong, Your Honor, because under the scope of review reg, the immigration judge facts stand, and you're reviewing both decisions, and the decision, the immigration judge decision clearly talks about the burden of proof to show a likelihood of torture. And if you'll allow me, I have one more argument that I would like to reach, and that is that because Petitioner is a criminal alien, the court does not have jurisdiction to consider that portion of the immigration judge's decision, which stands, not the acquiescence, but the likelihood of torture, because that's a factual claim. And under 242A2C, the court doesn't have jurisdiction to reach that factual claim. You would have jurisdiction to decide if they applied the wrong acquiescence standard. As to acquiescence, the government concedes that the board decision is legally incorrect. And that we have jurisdiction to decide. And as to a legal matter, yes, yes, the court has jurisdiction. But we wouldn't need, I guess my concern is we wouldn't need to reach it at all if we conclude that what the IJ said is that what happened here isn't torture. That's correct, Your Honor. Therefore, when he goes back to Tonga, he's not going to be tortured. Therefore, he doesn't make his burden of torture. That's absolutely correct, Your Honor. Because these are two separate independent findings made in the course of the torture application denial. We have this decision, which I must admit I don't quite understand, but which seems to say something contrary to what you're saying with regard to the jurisdiction issue. Could it be Morales? Morales, yes. I actually don't think that our argument is contrary to Morales. And I agree that it's a sort of brain-teasing decision. The reason that Morales does not apply, as UNU-UCALAO does not apply, is that those two decisions concern cases where an alien was charged both as to a criminal and as to a non-criminal ground. Whereas here, there is absolutely no question there was one removability ground. It was criminal, and the petitioner was charged under the criminal ground, and he was ordered removed under the criminal ground. And so, really, Morales, and this is, I think it's called Arabilla Morales, and UNU-UCALAO don't apply. Probably more opposite to this situation would be Ruiz Morales, which is why I said Arabilla Morales to distinguish them. And Ruiz Morales, although it was pre-real ID, at the end of the decision, talks about not having jurisdiction over legal and constitutional grounds, assuming that the court does not have jurisdiction over factual findings where there's a criminal alien bar. And there's one more, actually, pertinent decision as to jurisdiction, and that is in Ramadan 2, where, and I have a site here, in Ramadan 2, this court held that 242A2D, sort of added by real ID, at 648 and 649, states that real ID was not applicable, that it didn't change the court's jurisdiction as to a withholding denial, which is, of course, parallel to the deferral denial in this case. Okay, thank you very much for your argument, and thank you. Thank you very much. Thank you very much. Thank you very much. The case of A. Hullo-Laylee v. Gonzales is submitted. We will take a very short break. Thank you.
judges: Alarcon, Berzon, Tallman